FW: 400006897

NOV 12 2026 [illegible]
FILED - USDC - NDTX - FW

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

4-26CV1451-O

CONGHUA YAN,
Plaintiff,

Civil Action No. ____________________

JURY TRIAL DEMANDED

v.

PHIL SORRELLS, solely in his official capacity as Criminal District Attorney of Tarrant County, Texas; and

WILLIAM GRAHAM, in his individual and official capacities.
Defendants.

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DAMAGES AND LIMITED PROSPECTIVE RELIEF UNDER 42 U.S.C. § 1983; JURY DEMAND**

## I. NATURE OF THE ACTION AND LIMITED RELIEF REQUESTED

1. Plaintiff seeks damages from Texas Department of Public Safety Special Agent William Graham in his individual capacity. Graham allegedly obtained the warrant for Plaintiff's February 18, 2026 arrest to punish Plaintiff for challenging his family's removal from their home in court and on Facebook. Plaintiff seeks prospective relief from Graham in his official capacity so he can resume nonthreatening Facebook posts about the removal order and lawful home self-defense. He also seeks prospective relief from Tarrant County Criminal District Attorney Phil Sorrells in his official capacity to protect his filing and lawful service of court papers in the pending Texas civil case and the federal action he is ready to file against Harris.

2. Plaintiff asks the Court to stay only Count I, the damages claim against Graham individually, while the related criminal case is pending. Both cases concern the statements and warrant that led to the February 18 arrest. *Wallace v. Kato*, 549 U.S. 384, 393–94 (2007). Counts II and III seek prospective relief.

3. Plaintiff intends to serve more papers in his pending Texas civil case against Judge William Harris and to file a separate federal civil complaint against him promptly. Plaintiff alleges that the August 14, 2026 return to custody followed officials' treatment of an earlier mailing of court papers as prohibited contact. He seeks protection against a new bond-sanction request based solely on filing a nonthreatening civil paper or serving it by a method identified below.

4. The dispute over Plaintiff's home explains why he petitioned the Texas Supreme Court and why he invoked the right to lawful self-defense in his home while challenging the threatened loss

of his asserted property interest. Plaintiff seeks relief for First Amendment retaliation and reserves any claim for the seizure of the home or loss of property for separate proceedings.

## II. JURISDICTION, VENUE, AND PARTIES

5. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3). Plaintiff sues under 42 U.S.C. § 1983 for violations of the First Amendment, which applies to the States through the Fourteenth Amendment. Plaintiff seeks declaratory relief under 28 U.S.C. §§ 2201–2202.

6. Venue is proper in the Northern District of Texas, Fort Worth Division, under 28 U.S.C. § 1391(b)(2). The warrant application, arrest, criminal proceedings, and related bond actions occurred in Tarrant County, Texas.

7. Plaintiff Conghua Yan is a Texas resident, a party to the identified state civil and criminal proceedings, and the person arrested and subjected to the challenged conditions. He sues to vindicate only his own rights and injuries.

8. Defendant Phil Sorrells is the elected Tarrant County Criminal District Attorney. His office prosecutes Cause No. 1920704 and may ask the criminal court to act on alleged bond violations. Plaintiff seeks prospective relief against Sorrells solely in his official capacity.

9. Defendant William Graham was a Special Agent in the Texas Department of Public Safety Criminal Investigations Division, Badge No. 15627, when he applied for the warrant that led to Plaintiff's February 18, 2026 arrest. Plaintiff sues Graham in his individual capacity for damages in Count I and in his official capacity for prospective relief in Count III.

10. Judge William Harris, Judge David Evans, Hector Gomez, attorneys Martin and Patino, the receiver Melissa Fain, Tom Wilder and the persons involved in gathering or forwarding the Facebook material are identified as relevant actors in the factual sequence. Plaintiff does not assert a damages count against them in this Complaint and reserves leave to amend upon discovery of legally sufficient facts establishing personal involvement and an actionable federal claim.

## III. FACTUAL ALLEGATIONS

### A. The removal order and Plaintiff's response

11. Plaintiff and Fuyan Wang used the Southlake residence as their marital home. The final divorce decree in Tarrant County Cause No. 325-707596-21, later pending in the 360th District Court as Cause No. 360-707596-21, contemplated a sale and distribution of the net proceeds and gave Wang exclusive use and possession until closing.

12. On November 10, 2025, the court approved a proposed sale in the receivership. Plaintiff alleges that the sale had yet to close when the January possession dispute arose. Plaintiff and Wang disputed whether the court could require Plaintiff to leave before closing given the decree's terms.

13. Wang stated in her January 6, 2026 notice that she had discharged Cody W. Martin and Erika Vieyra Patino on November 14, 2025 and had told them they lacked authority to act or receive communications on her behalf. Plaintiff alleges that Wang never authorized them to arrange the January 15 hearing or appear and agree to an order for her.

14. On November 17, 2025, Wang executed a Special Warranty Deed conveying her interest in the residence to Plaintiff. The January 15 order identifies the deed as recorded the next day under Tarrant County document number D225216920. Plaintiff relied on the conveyance in seeking judicial protection of his asserted interest in the home.

15. Plaintiff alleges that Wang objected on December 23 and 26 to the January 15 hearing setting and said she could not attend. The court's December 30 notice email listed Plaintiff, the receiver, Martin, Patino, and others. It did not list Wang. Plaintiff alleges that Wang received no timely, legally adequate service through the court or an authorized representative.

16. On January 6, 2026, Wang filed a Notice of Termination of Counsel and Pro Se Appearance. She also sought to strike the former lawyers' appearance, obtain her client file, and secure direct service of court papers. She gave the court an address for direct service and disputed the former lawyers' authority to act for her.

17. Texas Rules of Civil Procedure 21(b) and 21a govern the timing and methods for serving hearing notices, and Rule 4 governs computation of time. Plaintiff alleges that Wang did not receive service that complied with those rules and that she lost the opportunity to appear and object before the court ruled on the deed and possession.

18. On January 15, Judge William "Bill" Harris heard receiver Melissa Fain's motion to vacate. The order records that Plaintiff and Wang did not appear and that Martin and Patino appeared on Wang's behalf. It also recites that all persons entitled to citation were properly cited. Plaintiff alleges that the lawyers lacked Wang's authority and that Wang received inadequate service of the hearing notice. The order declared the deed void, required Plaintiff to vacate by January 21, directed a sheriff or constable to remove him, and entitled the receiver to a writ of possession if he remained.

19. The clerk emailed the signed order to Plaintiff, the receiver, Martin, Patino, and another recipient on January 15. Wang was absent from that email's recipient list. Plaintiff alleges that the threatened loss of the home, the voiding of the deed, and the dispute over Wang's notice and representation prompted his court filings and public criticism.

20. Plaintiff and Wang jointly filed a petition for writ of mandamus in the Supreme Court of Texas on January 5, 2026, in Cause No. 26-0007. Plaintiff and Wang also filed an emergency motion to stay the trial-court proceedings. On January 15 at 10:57 a.m., they filed a signed supplement to that motion that reproduced the order directing removal. On page 3, Plaintiff and Wang invoked the Second Amendment and wrote, "COME AND TAKE IT on January 21, 2026," the deadline set by the order. Their second supplement, filed that afternoon, called the court's attention to Wang's January 6 notice and Martin and Patino's appearance at the hearing.

21. On Facebook, Plaintiff wrote, "I will use 2A to defend my homestead." Plaintiff alleges he was asserting the right to lawful self-defense in the home where his child lived. Graham's affidavit attributed this related statement to him: "Bill Harris signed an order today, I filed it to SCOTX and told them COME AND TAKE it, I will shoot. They need to bring a SWAT team and kill me." Plaintiff alleges that the post was shared with a limited audience and displayed the order directing officers to remove him from the house.

22. Readers warned Plaintiff against an armed confrontation with law enforcement and urged him to pursue judicial or public remedies. Their responses addressed what might happen if officers came to the house to enforce the removal order.

23. Plaintiff's reference to "2A" invoked the constitutional right to possess a firearm for lawful self-defense in the home. *District of Columbia v. Heller*, 554 U.S. 570, 628–30, 635 (2008). That right applies to the States through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 750, 791 (2010). Plaintiff alleges he named Harris as the judge who signed the order and did not threaten to harm him. The order, the conditional language, and the readers' responses supply context for determining whether the post conveyed a true threat. *Watts v. United States*, 394 U.S. 705, 707–08 (1969). A true-threat prosecution also requires at least conscious disregard of a substantial risk that the words would be understood as threatening violence. *Counterman v. Colorado*, 600 U.S. 66, 74, 79–82 (2023).

**B. What Graham put before the warrant magistrate**

24. Graham's sworn affidavit states that DPS Special Agent Charles Bridges forwarded information on January 16 about language the Texas Supreme Court had received in Cause No. 26-0007. Graham reviewed the January 15 morning supplement, quoted page 3, and identified the filing as Attachment A. The attachment included the removal order and its January 21 deadline.

25. The affidavit states that Graham also received a Texas Fusion Center report on January 20. The report said that Hector Gomez, the Office of Court Administration's court security director, submitted the Facebook screenshot on behalf of Judge David Evans. It described the post as appearing to threaten Harris. The analyst also recorded that the post might concern proceedings to remove Plaintiff from the home and that officers might come to execute the order. Graham included that assessment in the affidavit.

26. Graham compared publicly available images with driver-license information and identified Plaintiff as the Facebook user. He cited Southlake police and Tarrant County sheriff's office bulletins, including the Southlake bulletin's account of statements about defending the home. The affidavit also records that DPS Special Agent Jake Clark spoke with Precinct 3 constables on January 20 about Plaintiff and the civil proceedings. Plaintiff alleges that the affidavit identified the officials who transmitted the screenshot but did not identify who originally captured it or present the full thread.

27. Plaintiff alleges the full discussion showed that readers understood the shooting reference to concern what could happen if officers came to the house. Their warnings addressed that possible confrontation. The affidavit itself recorded the removal context and did not identify a statement directing violence at Harris.

28. Graham presented the statements as grounds to believe Plaintiff had committed criminal retaliation. Plaintiff alleges that the warrant application did not establish probable cause for the alleged offense. The Facebook post identified Harris as the signer of the order and referred to a possible encounter at the house, where the order directed officers to execute the removal. Plaintiff alleges that, read in that context, the statements did not support a reasonable inference that he

intentionally or knowingly threatened to murder Harris for or on account of Harris's judicial service. Tex. Penal Code § 36.06(a)(1)(A).

**C. The February arrest, execution of the writ, and later charges**

29. Plaintiff alleges that on February 18, 2026, officers arrested him when he dropped his child off at school. They took him to jail under the warrant Graham had obtained.

30. The District Clerk first assessed $188 for a writ of possession under Tex. Prop. Code § 24.0061 in transaction 832. That statute directs delivery of possession to a prevailing landlord. *Id.* § 24.0061(a), (d)(2)(A). On January 22 the clerk reversed that charge in transaction 840 and recorded issuance of a "Writ of Possession (Prop. 71.107)" in transaction 841. Section 71.107 governs judgments for the State in escheat proceedings. *Id.* § 71.107(a)-(b). Plaintiff has found no judgment escheating the home to the State. The January 22 writ invokes the January 15 family-court order and directs the constable to deliver possession to the court-appointed receiver, Melissa Fain. Its service copy bears document number 36070759621000841, and transaction 872 records the return of that same writ as executed on February 18.

31. Deputy Constable Keeman Malone's return records that he personally served Plaintiff at the Keller Regional Detention Center at 10:02 a.m. Plaintiff alleges that Malone handed him the writ in his jail cell. Within the next hour, Plaintiff alleges, law-enforcement officers forced their way into his room at the house, took possession of the home, emptied it, and put all of his and his child's belongings on the street. Plaintiff's February 22 declaration places the removal of the belongings at about 11:00 a.m.

32. Before the arrest, DPS Special Agent Jake Clark spoke with the constables about Plaintiff and the civil proceedings, as Graham's affidavit records. Plaintiff alleges that his arrest kept him from being at the home to object when officers executed the writ that same day.

33. Plaintiff's child lost her habitual home and everything she had there. She has not lived in the home since. The mortgage remains in Plaintiff's name, and he alleges that he has continued to pay it and the property taxes since the writ was executed.

34. At magistration on February 19, bond was set at $25,000. The paperwork records that the probable-cause affidavit was not attached. The initial written conditions included pretrial reporting and weapons restrictions and stated "No contact with victim," without naming the victim. Plaintiff alleges that he received no oral identification of Harris as the person covered by that condition at magistration.

35. The May 15, 2026 criminal complaint identified W. Harris and alleged a threat to harm him by murder. The June 9, 2026 indictment in Cause No. 1920704 charged the same alleged threat. Both filings postdate the January 29, 2026 warrant and the February 18 arrest.

36. Plaintiff alleges that the February arrest and the restraints it caused cost him his liberty, bail and supervision expenses, and time with his family. He also alleges emotional distress, reputational injury, work disruption, and deterrence from further court petitioning and lawful speech.

**D. The August bond action**

37. Plaintiff filed a verified pleading in Cause No. 360-707596-21 on April 6, 2026, before the May 15 criminal complaint identified W. Harris. The May 26 severance order identifies the April 6 pleading and directed the clerk to assign a new cause number to the claims against Harris and Evans. Those claims proceeded in civil Cause No. 017-378207-26. Plaintiff alleges that he mailed his First Amended Verified Complaint and supporting papers to both through USPS to pursue that case. On August 10, 2026, the e-filing system recorded the submission of his certificate of USPS service.

38. Plaintiff alleges that officials treated the mailing to Harris as prohibited contact under the February bond condition. The February condition identified the protected person only as the victim. By the time of the mailing, both the criminal complaint and the indictment identified W. Harris.

39. By August 12, 2026, Plaintiff had learned of a reported bond violation in Criminal District Court No. 2. He disputed that mailing a pleading in the civil case violated the February condition.

40. The August 14 docket entry records that the court declared the bond insufficient for a "Bond Violation," issued a warrant, and remanded Plaintiff to custody. The August 14 appearance bond sets bond at $50,000, directs release to CSCD, continues the previous conditions, and states "NO CONTACT WITH JUDGE WILLIAM HARRIS."

41. Plaintiff alleges that the court took those steps because his mailing of the amended civil complaint was treated as prohibited contact. The docket records a bond violation without specifying the underlying conduct. Plaintiff relies on the alleged use of the mailing to explain why he is holding back further filings.

**E. The court filings Plaintiff intends to serve**

42. Cause No. 017-378207-26 remains pending, and Plaintiff intends to file and serve further papers as the case proceeds. On September 2, 2026, Assistant Attorney General Scot M. Graydon appeared and answered for Harris and Evans. The electronic service receipt for Plaintiff's response to the defendants' procedural notice records September 4 transmission to Graydon and another Office of the Attorney General contact (Envelope No. 119567349). Plaintiff intends to serve future filings through Harris's counsel of record under Texas Rules of Civil Procedure 21 and 21a, consistent with the bond conditions.

43. Plaintiff also has a separate federal civil complaint against Harris ready to file and intends to file it promptly. Once the summons issues, Plaintiff intends to have a qualified nonparty serve it with the complaint under Federal Rule of Civil Procedure 4 in a manner consistent with the criminal court's bond conditions.

44. The August 14 appearance bond expressly names Harris but does not address formal service of civil papers. Because Plaintiff alleges that his earlier mailing led to his return to custody, he fears that officials will also treat the methods of formal service described above as prohibited contact. Sorrells's office prosecutes Cause No. 1920704 and can ask the criminal court to act on an alleged breach. Plaintiff alleges that the risk of another request for confinement is deterring him from arranging service of the new complaint.

## IV. CLAIMS FOR RELIEF

45. Plaintiff alleges the dispute over Wang's notice and representation to explain his own court filings and speech. The injury for which he seeks relief is his own.

## COUNT I. FIRST AMENDMENT RETALIATORY ARREST (GRAHAM, INDIVIDUALLY)

46. The First Amendment protects Plaintiff's right to criticize the January 15 removal order and petition the Texas Supreme Court to stop its enforcement. Plaintiff challenged the order as depriving him of his asserted property interest in his family's home without due process. In his stay supplement and Facebook post, he invoked the right to lawful self-defense in the home. On Facebook he wrote, "I will use 2A to defend my homestead." Plaintiff alleges that the separate shooting reference quoted in paragraph 21 concerned what might happen at his home if officers came to execute the order. He named Harris as the judge who signed the order and did not say he would go looking for Harris or shoot him. Acting under color of Texas law, Graham personally relied on the supplement and Facebook material to obtain the warrant that led to Plaintiff's arrest.

47. The warrant application lacked probable cause to arrest Plaintiff for the alleged threat against Harris. Texas Penal Code § 36.06(a)(1)(A) requires an intentional or knowing threat of harm by an unlawful act in retaliation for or on account of a public servant's service or status, as relevant here. The order assigned execution to a sheriff or constable. The analyst's assessment in Graham's affidavit itself recognized that the post could concern officers executing the order at Plaintiff's house. The affidavit did not include the full Facebook discussion. Plaintiff alleges that the responses addressed a possible confrontation at the house. See ¶¶ 21–28. Graham identified Harris as the subject of the alleged threat, but the facts recited in his affidavit identified Harris as the signer and gave no factual basis to infer that Plaintiff threatened to murder him on account of signing the order. See *Bailey v. Iles*, 87 F.4th 275, 285–86, 289–90 (5th Cir. 2023) (evaluating a Facebook post in context and reversing the grant of qualified immunity on the retaliation claim).

48. Plaintiff alleges that Graham obtained the warrant to punish him for criticizing and challenging the removal order. Graham treated the criticism of Harris and the language about enforcement at the house as a threat to kill Harris, even though his own affidavit reported the analyst's account of how the post related to officers enforcing the order. Graham's reliance on the court filing and post in those circumstances supports the inference that he would not have sought the warrant absent a purpose to punish Plaintiff's speech and petitioning. The arrest took away Plaintiff's liberty and would deter a person of ordinary firmness from further criticism or petitioning. See *Keenan v. Tejeda*, 290 F.3d 252, 258–62 (5th Cir. 2002). See also *Nieves v. Bartlett*, 587 U.S. 391, 398–404 (2019).

49. Plaintiff seeks compensatory damages from Graham individually for the injuries Graham caused by procuring the February 18 arrest, as alleged in paragraph 36. Plaintiff seeks one dollar in nominal damages in the alternative if he proves the violation but no compensable loss. He seeks punitive damages if the evidence shows that Graham acted with reckless or callous indifference to his federally protected rights. *Smith v. Wade*, 461 U.S. 30, 56 (1983).

## COUNT II. PROSPECTIVE RELIEF FOR FILING AND SERVING CIVIL PAPERS (SORRELLS, OFFICIAL CAPACITY)

50. Plaintiff seeks to exercise his First Amendment right to petition by filing and serving nonthreatening court papers as described in paragraphs 42–43. See *BE&K Construction Co. v. NLRB*, 536 U.S. 516, 524–25 (2002). He alleges that the threat of a new bond-sanction request chills his exercise of that right now. He is ready to file a separate federal action against Harris and fears returning to custody if he arranges service of the summons and complaint. He bases that fear on the alleged treatment of his earlier mailing as prohibited contact and the current bond condition expressly naming Harris. See *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–65 (2014). See also *Lowery v. Mills*, No. 24-50879, slip op. at 11–12 (5th Cir. Oct. 31, 2025).

51. Sorrells's office represents the State in the pending prosecution and can seek sanctions for an alleged bond violation. An order directed to that office would prevent it from seeking a new sanction solely for the limited filing and service described below. Plaintiff seeks relief against Sorrells in his official capacity under *Ex parte Young*, 209 U.S. 123, 155–60 (1908).

52. Plaintiff seeks a declaration and preliminary and permanent injunction barring Sorrells from seeking a new bond sanction based solely on Plaintiff filing a nonthreatening civil paper or serving one by either method described here. This request covers filing the planned federal complaint against Harris, including the act of filing before any service. In Cause No. 017-378207-26, Plaintiff would serve later papers electronically only on Harris's counsel of record under Texas Rules of Civil Procedure 21 and 21a. In the planned federal action, a qualified nonparty would serve the summons and nonthreatening complaint under Federal Rule of Civil Procedure 4. Plaintiff would have no personal contact with Harris in either instance.

53. A bond condition may reasonably protect the alleged victim and the community. Tex. Code Crim. Proc. art. 17.40(a). Applying it to the filing or formal service described above would put Plaintiff at risk of detention for taking a step required to pursue his civil claims. The proposed methods give Harris notice through counsel or a qualified process server while preserving the bond's protection against personal contact, threats, and harassment. The requested relief concerns future applications by Sorrells's office. The criminal court retains authority over the pending charge and the existing bond.

## COUNT III. PROSPECTIVE RELIEF FOR FUTURE FACEBOOK SPEECH (GRAHAM, OFFICIAL CAPACITY)

54. Plaintiff intends to resume posting on his own Facebook account about the January 15 removal order and the loss of his family's home. He intends to criticize the order and again write, "I will use 2A to defend my homestead," to express his position on the right to lawful self-defense in the home. He intends to make those posts without threatening unlawful violence or communicating directly with Judge William Harris.

55. Plaintiff fears another arrest and is holding back that speech. Graham used the January Facebook material and the related court filing to obtain the warrant for the February 18 arrest. The State still prosecutes the alleged threat that led to that arrest. See ¶¶ 21–29, 35–36. Because the new posts would address the same order and assert the same right, Plaintiff fears Graham will

again treat those posts as grounds for a warrant. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–65 (2014); *Lowery v. Mills*, No. 24-50879, slip op. at 11–12 (5th Cir. Oct. 31, 2025).

56. Graham exercised DPS authority when he applied for that warrant. On information and belief, Graham continues to serve as a DPS special agent with authority to seek warrants. Plaintiff seeks an order directed to Graham's exercise of that authority to prevent another warrant application in retaliation for the nonthreatening posts described in paragraph 54. *Ex parte Young*, 209 U.S. 123, 155–60 (1908).

57. The First Amendment protects Plaintiff's proposed criticism of the removal order and his nonthreatening discussion of lawful home self-defense. Whether a statement conveys a true threat depends on its words and context. *Bailey*, 87 F.4th at 285–86; *Counterman v. Colorado*, 600 U.S. 66, 74, 79–82 (2023). Plaintiff seeks a declaration and preliminary and permanent injunction barring Graham from seeking a new warrant based solely on the nonthreatening posts described in paragraph 54. The injunction would apply to posts made after its entry. The state court retains authority over the pending charge and existing bond.

## V. REQUEST TO STAY COUNT I AND RESERVATION OF CLAIMS

58. Plaintiff reserves a separate Fourth Amendment claim against Graham individually for seizure under the allegedly misleading arrest warrant if and when that claim accrues. *Winfrey v. Rogers*, 901 F.3d 483, 492–93 (5th Cir. 2018); *Thompson v. Clark*, 596 U.S. 36, 49 (2022).

59. Plaintiff requests a stay of Count I while the criminal case remains pending because both cases concern the same statements, warrant, and probable cause. *Wallace v. Kato*, 549 U.S. 384, 393–94 (2007). If the Court abstains from adjudicating Count I because of that prosecution, Plaintiff requests a stay of the damages claim under *Deakins v. Monaghan*, 484 U.S. 193, 202 (1988). Counts II and III seek prospective relief and remain outside the requested stay.

60. Plaintiff reserves his challenges to the state civil orders, receivership, deed cancellation, writ, and disposition of the home for appropriate proceedings. Plaintiff reserves any challenge to the past bond ruling and any claim against another actor whose personal involvement supports a claim under applicable law.

## VI. DEMAND FOR RELIEF

Plaintiff asks the Court to grant the following relief.

**(A) Count I against Graham individually.** Enter judgment for Plaintiff and award compensatory damages for injuries proved to have resulted from the February 18 arrest, including loss of liberty during arrest and confinement, time away from family, bail and supervision expenses, work disruption, emotional distress, and reputational injury. If Plaintiff proves the violation without proving compensable loss, award one dollar in nominal damages.

**(B) Count I punitive damages.** Award punitive damages against Graham individually if the evidence establishes reckless or callous indifference to Plaintiff's federally protected rights.

**(C) Count II against Sorrells in his official capacity.** Declare that the First Amendment bars Sorrells from seeking a new bond sanction solely because Plaintiff files a nonthreatening civil

paper, including the planned federal complaint before service, or serves one by either method described in paragraph 52 without personal contact by Plaintiff. Preliminarily and permanently enjoin Sorrells from seeking a sanction on that basis.

**(D) Count III against Graham in his official capacity.** Declare that the First Amendment bars Graham from seeking a new warrant based solely on the nonthreatening Facebook posts described in paragraph 54. Preliminarily and permanently enjoin Graham from seeking a new warrant on that basis.

**(E) Stay of Count I.** Grant the separate motion to stay Count I under *Wallace* and *Deakins* and set deadlines for that count by order.

**(F) Costs and interest.** Award taxable costs as authorized by law, postjudgment interest on any money judgment, and further lawful relief the Court deems appropriate.

(G) Grant a trial by jury on all issues so triable.

## VII. JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands trial by jury on all triable issues.

## VIII. SIGNATURE

Respectfully submitted,

Conghua Yan

Conghua Yan, Plaintiff pro se
2140 E. Southlake Blvd., Suite L-439
Southlake, Texas 76092
Telephone: (214) 228-1886
Email: arnold200@gmail.com
Dated: Nov 12, 2026

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Yan, Conghua

**(b)** County of Residence of First Listed Plaintiff: Tarrant
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Conghua Yan, pro se
2140 E. Southlake Blvd., Suite L-439
Southlake, TX 76092 | (214) 228-1886

## DEFENDANTS

Sorrells, Phil (official capacity)
Graham, William (individual and official capacities)

RECEIVED-USDC-NDTX-FW

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

4-26CV1451-O

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

### REAL PROPERTY
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

### TORTS

**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

### CIVIL RIGHTS
- [X] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

### LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

### IMMIGRATION
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

### BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

### INTELLECTUAL PROPERTY RIGHTS
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

### SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

### FEDERAL TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983

Brief description of cause:
First Amendment retaliatory arrest and prospective relief for speech, filing, and service

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ See complaint

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY *(See instructions)*:

JUDGE Means, O'Connor, and Pittman DOCKET NUMBER See attached notice

DATE: Nov 12, 2026

SIGNATURE OF ATTORNEY OF RECORD: Conghua Yan

FOR OFFICE USE ONLY

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

U.S. District Court | Northern District of Texas | Fort Worth Division

# Court Filing Packet Index

Conghua Yan v. Phil Sorrells and William Graham

Civil Action No. ____________________

Print page 1 of the JS 44 PDF. Page 2 contains the form instructions.
Packet page numbers count this index as page 1.


| File | Document | Packet pages |
|---|---|---|
| 02 | Civil Cover Sheet (JS 44) | 2 |
| 01 | Plaintiff's Original Complaint | 3-12 |
| 03 | Certificate of Interested Persons / Disclosure Statement | 13-14 |
| 04 | Notice of Potentially Related Cases | 15-16 |
| 05 | Summons for William Graham (AO 440) | 17-18 |
| 06 | Summons for Phil Sorrells (AO 440) | 19-20 |
| 07 | Motion and Brief to Stay Only Count I | 21-22 |
| 08 | Proposed Order Staying Only Count I | 23 |
| 09 | Rule 65 Motion and Brief for Preliminary Injunction (Count III) | 24-28 |
| 10 | Appendix in Support of the Rule 65 Motion | 29-39 |
| 11 | Proposed Preliminary Injunction (Count III) | 40-41 |

**Total including index: 41 pages**